NVB 4001 (Rev. 12/15)

# * * § 362 INFORMATION SHEET * *

| | | |
|---|---|---|
| KATHRYN NICOLE ERVIN | 20-50981-btb | GB-1 |
| DEBTOR | BK- | MOTION #: |
| Carvana, LLC | CHAPTER: 13 | |
| MOVANT | | |

**_Certification of Attempt to Resolve the Matter Without Court Action:_**

_Moving counsel hereby certifies that pursuant to the requirements of LR 4001(a)(2), an attempt has been made to resolve the matter without court action, but movant has been unable to do so._

_Date:_ 12/24/2020                _Signature:_ Regina A. Habermas, Esq.

_Attorney for Movant_

PROPERTY INVOLVED IN THIS MOTION: 2016 Chevrolet Equinox LT

NOTICE SERVED ON:  Debtor(s) ✔ ; Debtor's counsel ☐ ; Trustee ✔ ;

DATE OF SERVICE: 12/24/2020

| MOVING PARTY'S CONTENTIONS: | DEBTOR'S CONTENTIONS: |
|---|---|
| The EXTENT and PRIORITY of LIENS: | The EXTENT and PRIORITY of LIENS: |
| 1st $22,083.72 as of December 2, 2020. | 1st |
| 2nd | 2nd |
| 3rd | 3rd |
| 4th | 4th |
| Other: | Other: |
| Total Encumbrances: $22,083.72 | Total Encumbrances: |
| APPRAISAL of OPINION as to VALUE: | APPRAISAL of OPINION as to VALUE: |
| $18,500.00 based on NADA valuation. | |

| TERMS of MOVANT'S CONTRACT with the DEBTOR(S):: | DEBTOR'S OFFER of "ADEQUATE PROTECTION"for MOVANT : |
|---|---|
| Amount of Note: $21,024.80 | . |
| Interest Rate: 23.01 | . |
| Duration: 72 months. | . |
| Payment per Month: $541.00 | . |
| Date of Default: 10/22/2019 | . |
| Amount in Arrears: $7,098.00 | . |
| Date of Notice of Default: | . |
| SPECIAL CIRCUMSTANCES: | SPECIAL CIRCUMSTANCES: |
| SUBMITTED BY: Regina A. Habermas, Esq. | SUBMITTED BY: |
| /s/ Regina A. Habermas, Esq. | SIGNATURE: |

Regina A. Habermas, Esq. (8481)
GHIDOTTI | BERGER LLP
8716 Spanish Ridge Avenue, #115
Las Vegas, NV 89148
Tel: (949) 427-2010
Fax: (949) 427-2732
ghabermas@ghidottiberger.com

Attorneys for Secured Creditor,
Carvana, LLC, its successors and assigns

UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEVADA – RENO DIVISION

| | |
|---|---|
| In Re:<br><br>KATHRYN NICOLE ERVIN,<br><br>      Debtor. | Case No.:  20-50981-btb<br><br>Chapter 13<br><br>**MOTION FOR RELIEF FROM STAY**<br>**(11 U.S.C. § 362, Bankruptcy Rule 4001)** |

## I.    INTRODUCTION

**COMES NOW** Secured Creditor, Carvana, LLC, its successors and assigns ("**Movant**"), and moves this Court for an order terminating the automatic stay, allowing Movant to proceed with and complete any and all contractual and statutory remedies incident to its interest held in the 2016 Chevrolet Equinox LT, VIN 2GNALCEK6G6342990 ("**Vehicle**") by virtue of the Contract described below and attached as an exhibit to this motion and memorandum.  Movant further moves that, absent objection, the provisions of FRBP 4001(a)(3) be waived to avoid further deterioration of Movant's secured position.

Prior to filing of the Motion for Relief from Stay, counsel attempted to resolve the matter outside of Court.  However, such attempts were not successful.

## II.    JURISDICTION

This Court has jurisdiction over this proceeding pursuant to 28 U.S.C § 1334 and 28 U.S.C. § 157(b)(2)(G).  This case relates to a case under Title 11 of the United States Code ("**Code**").  This proceeding is defined as a "core proceeding" as that is defined in the Code.

### III.    STANDING

Under 11 U.S.C. § 362, a party seeking relief from stay must be a "party in interest." To establish that Movant is a "party in interest," it must establish that it has at least a colorable claim to the Vehicle that is the subject of the motion.  Here, Movant's claim is based on the contract attached to the declaration in support of the Motion for Relief from Stay, on file with the Court.  Movant's interest in the contract and Vehicle is described below.

### IV.    FACTS AND PROCEDURAL HISTORY

On or about July 23, 2019, Debtor Kathryn Nicole Ervin ("**Debtor**"), executed a Contract for Sale and Security Agreement for Sale of Vehicle in the original principal amount of $21,024.80 ("**Contract**").  A true and correct copy of the Contract is attached as **Exhibit "1"** and supported by the Declaration in Support of Motion for Relief from Stay ("**Declaration**") filed concurrently with this Motion and incorporated herein by reference for all purposes.  Movant is an entity entitled to enforce the Contract.  The terms of the Contract included a pledge of the Vehicle as collateral for Debtor's repayment of the subject loan. (*See, e.g.*, **Exhibit "1,"** p. 1, 2, and 5.)

After the execution of the Contract, Debtor filed for protection under Chapter 13 of Title 11 of the United States Code on October 21, 2020 (Doc. 1).  On October 21, 2020, the Clerk of the Court filed a Notice of Incomplete and/or Deficient Filing, noting Debtor had not filed any Schedules, a Statement of Financial Affairs, a list of creditors, or a plan.  (Doc. 7). As of the filing of this Motion, Debtor has failed to cure those deficiencies.

As shown in the Declaration, as of December 2, 2020, the total payoff of the Vehicle is $22,083.72.  The last payment was received on January 30, 2020, which made the account due for the October 22, 2019 payment and Debtor is currently delinquent $7,098.00.  A true and correct copy of the Payment History is attached hereto as **Exhibit "2"** and supported by the Declaration filed concurrently with this Motion and incorporated herein by reference for all purposes.  The value of the Vehicle as of December 2, 2020 is $18,500.00.  A true and correct copy of the NADAguides Value Report is attached hereto as **Exhibit "3"** and supported by the Declaration filed concurrently with this Motion and incorporated herein by reference for

1  all purposes.

2      As demonstrated in the Declaration, Debtor failed and refused to execute and return to

3  Secured Creditor the documents necessary to perfect Secured Creditor's lien on the Vehicle.

4  However, the Contract contains a number of provisions demonstrating Debtor's grant of a

5  security interest in the Vehicle including, but not limited to, the following.

6  **Section D        Vehicle Retail Installment Contract and Security Agreement**

7  This contract is made the 23 (day) of 07 (month) of 19 (year), between you, the
   Buyer(s) shown on page 1 of 7, and us, the Seller shown as Creditor on page 1 of
8  7…you agree to buy and we agree to sell, subject to the terms of this contract,
   the following described vehicle, accessions and equipment (all of which are
9  referred to in this contract as "Collateral"):

10
11      [Used 2016 Chevrolet Equinox SUV VIN 2GNALCEK6G6342990]

12  You, severally and jointly, promise to pay to us the Total of Payments (shown in
    Section B) according to the Payment Schedule (also shown in Section B), until
13  paid in full, together with interest after maturity at the Annual Percentage Rate
    disclosed on page 1 of 7.

14
15  *To secure such payment, you grant to us a purchase money security interest
    under the Uniform Commercial Code in the Collateral and in all accessions to
16  and proceeds of the Collateral.*  Insurance in which we or our assignee are
    named as beneficiary or loss payee, including any proceeds of such insurance or
17  refunds or unearned premiums, or both, are assigned as *additional security for
    this obligation and any other obligation created in connection with this sale.*
18  We, our successors and assigns, hereby waive any other security interest or
    mortgage which would otherwise secure your obligations under this contract
19  except for the *security interests and assignments granted by you in this contract.*

20  (*See* Contract, p. 1 and 2, attached hereto as **Exhibit "1,"** italic emphasis added.)

21
22      **ADDITIONAL TERMS AND CONDITIONS (Simple Interest)**

23  **DEFAULT** – *If you default* in the performance of this agreement…*we may* at
    our option and without   notice or demand (1) declare all unpaid sums
24  immediately due and payable, (2) file suit against you for all unpaid sums, and
    (3) *take immediate possession of the vehicle.  Upon taking possession of the
25  vehicle and giving notice as provided by law, if you do not redeem the vehicle,
    we will sell it at public or private sale.*

26
27  **OWNERSHIP OF THE COLLATERAL** – You represent that there are no
    liens, claims or encumbrances on the Collateral except for *the security interest
28  you grant by this contract to us* and you further represent that you have executed

**3**

no financing statement covering the Collateral except for the one relating to this contract.

**LOCATION AND USE OF COLLATERAL** – You agree to notify us in writing of any change of your address or of any change in the location of the Collateral. Unless you first have received our written consent,…*you may not sell, lease or otherwise dispose of the Collateral or any part of it by any means*…You will keep the Collateral in good condition and will not alter or substantially modify it or conceal it. *You will not allow any other security interest on the Collateral besides the security interest granted to us under this contract.*

(*See* Contract, p. 5, attached hereto as **Exhibit "1,"** italic emphasis added.)

## V.      ARGUMENT

### A.      Cause Exists to Grant Relief Pursuant to Section 362(d)(1), Lack of Adequate Protection

Movant submits that cause exists to grant relief under Section 362(d)(1) of the Code, which provides that a party in interest may seek relief from stay based upon "cause," including lack of adequate protection.  Adequate protection may be offered in the form of cash or periodic payments or the existence of a sufficient equity cushion.

Movant submits that adequate protection in this case requires normal and periodic cash payments to Movant.  The Debtor has not made a payment to Movant in more than **ten (10) months** and is more than 13 months behind on the monthly payments due under the Contract. A continuing failure to maintain required regular payments has been held, in and of itself, to constitute sufficient cause for granting a motion to modify the stay.  (*In re Trident Corp.*, 19 BR 956,958 (Bankr. E.D. Pa. 1982), aff'd 22 BR 491 (Bankr. E.D. Pa. 1982 (citing *In re Hinkle*, 14 BR 202, 204 (Bankr. E.D. Pa. 1981); see also *In re Jones*, 189 BR 13, 15 (Bank. E.D. Okla 1995) (citing *Hinkle*, 14 BR at 204)).  The Debtor's failure to tender regular ongoing monthly payments is sufficient cause to terminate the automatic stay.

### B.      Cause Exists to Grant Relief Pursuant to Section 362(d)(2), Lack of Equity

Further, there appears to be no equity in the Vehicle and the Vehicle is not necessary for an effective reorganization.  As noted above, the outstanding debt on the Vehicle totals $22,083.72, but the value of the Vehicle is only $18,500.00.  In addition, Debtor has failed to

1  fil a proposed plan of reorganization despite the Clerk's notice of the need to do so.  Movant

2  submits the Court should infer the Vehicle is not necessary to an effective reorganization from

3  Debtor's failure to file such a plan or prosecute this bankruptcy action.  Consequently,

4  pursuant to Section 362(d)(2), cause exists to lift the stay.

5                              **VI.    CONCLUSION**

6        Based on the foregoing, Movant alleges that it is not adequately protected.  Movant is

7  not receiving regular monthly payments, and is unfairly delayed from proceeding with the

8  collection of the Vehicle.  Further, Debtor does not have equity in the Vehicle and the Vehicle

9  is not necessary for an effective reorganization.  Accordingly, relief from the automatic stay

10 should be granted to Movant pursuant to 11 U.S.C. §362(d)(1) and (2).

11       **WHEREFORE**, Movant respectfully requests an Order be entered by this Court as

12 follows:

13       1.       An Order Terminating the Automatic Stay, permitting Movant to continue all

14 acts necessary to secure possession of the subject Vehicle and sell the Vehicle in a

15 commercially reasonable manner without further Hearing before this Court pursuant to

16 applicable state law;

17       2.       An Order waiving the 14-day stay provided by Bankruptcy Rule 4001(a)(3);

18       3.       An Order binding and effective despite any conversion of this case; and

19       4.       For such other relief as this Court deems appropriate

20
   DATED:  December 24, 2020              GHIDOTTI | BERGER LLP
21

22                                        By:   */s/ Regina A. Habermas, Esq.*
                                                Regina A. Habermas, Esq. (8481)
23                                              8716 Spanish Ridge Avenue, #115
                                                Las Vegas, NV  89148
24                                              ghabermas@ghidottiberger.com
                                                Attorneys for Secured Creditor,
25                                              Carvana, LLC

26

27

28

Regina A. Habermas, Esq. (8481)
GHIDOTTI | BERGER LLP
8716 Spanish Ridge Avenue, #115
Las Vegas, NV 89148
Tel: (949) 427-2010
Fax: (949) 427-2732
ghabermas@ghidottiberger.com

Attorneys for Secured Creditor,
Carvana, LLC, its successors and assigns

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA – RENO DIVISION

| | |
|---|---|
| In Re:<br><br>KATHRYN NICOLE ERVIN,<br><br>　　　Debtor. | Case No.: 20-50981-btb<br><br>Chapter 13<br><br>**DECLARATION IN SUPPORT OF MOTION FOR RELIEF FROM STAY (11 U.S.C. § 362, Bankruptcy Rule 4001)** |

I, _Jennifer Cruise_, declare and state as follows:

1.     I am employed as a _Senior Manager_ with Carvana, LLC ("**Movant**") and am authorized to sign this declaration on behalf of Movant. I am over the age of eighteen years and not a party to this action. I have personally reviewed Movant's records as they relate to the Motion for Relief from Stay and contract obligation referred to herein, and as to the following facts, I know them to be true of my own knowledge or I have gained knowledge of them from my review of Movant's business records. I am over the age of eighteen and not a party to this action. If called as a witness, I could and would testify competently under oath to the following facts.

2.     I am familiar with the manner and procedure by which the records of Movant are obtained, prepared, and maintained. Those records are obtained, prepared, and maintained by employees or agents of Movant in the performance of their regular business duties at or near the time, act, conditions, or events recorded thereon. The records are made either by

persons with knowledge of the matters they record or from information obtained by persons with such knowledge.  It is my business practice to maintain these records in the regular course of business.

3.    Movant has been responsible for the handling of all matters relative to the subject contract prior to the filing of the within motion, including but not limited to processing of all payments received, crediting of received payments, adding all proper charges to the account, confirming the maintenance of insurance, communicating with and responding to the borrower on all matters relative to the contract.

4.    On or about July 23, 2019, Debtor Kathryn Nicole Ervin ("**Debtor**"), executed a Contract for Sale and Security Agreement for Sale of Vehicle in the original principal amount of $21,024.80 ("**Contract**").  A true and correct copy of the Contract is attached as **Exhibit "1"** and incorporated herein by reference for all purposes.  Movant is an entity entitled to enforce the Contract.

5.    All objections (collectively, "**Obligations**") of the Debtor under the Contract are secured by a 2016 Chevrolet Equinox LT, VIN#2GNALCEK6G6342990 ("**Vehicle**") as evidenced by the terms of the Contract, which included a pledge of the Vehicle as collateral for Debtor's repayment of the subject loan. (*See, e.g.*, **Exhibit "1,"** p. 1, 2, and 5.)

6.    On October 21, 2020, Debtor filed a Chapter 13 bankruptcy petition commencing the instant case.

7.    As of December 2, 2020, the total payoff of the Vehicle is $22,083.72.  The last payment was received on January 30, 2020, which made the account due for the October 22, 2019 payment and Debtor is currently delinquent $7,098.00.  A true and correct copy of the Payment History is attached hereto as **Exhibit "2"** and incorporated herein by reference for all purposes.

8.    The value of the Vehicle as of December 2, 2020 is $18,500.00.  A true and correct copy of the NADAguides Value Report is attached hereto as **Exhibit "3"** and incorporated herein by reference for all purposes.

///

2

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on 12/17/2020 (Date), _____Mesa_____ (City), ___AZ___ (State).

_____
Signature

_____
Printed Name   Jennifer Cruise

3

# EXHIBIT "1"

# CARVANA

1930 W. Rio Salado Pkwy
Tempe, AZ 85281
Office: 602.852.6604
Fax: 602.667.2581
Email: legal@carvana.com

Date: August 28, 2019

To Whom It May Concern,

This letter shall serve as formal acknowledgement that Bridgecrest is a valid loan servicer for Carvana loans.

If you have any questions, please contact me at the email address or phone number above.

Sincerely,

Name: Paul Breaux

Title: General Counsel, Vice President, and Secretary

1930 W. Rio Salado Pkwy | Tempe, AZ 85281 | O: 602.852.6604 | F: 602.667.2581

DocuSign Envelope ID: 033E7063-5D4B-4519-8DA0-B8C7B7BE2F9F

This is a copy view of the Authoritative Copy held by the designated custodian

# CONTRACT FOR SALE AND SECURITY AGREEMENT FOR SALE OF VEHICLE WITH PAYMENT OF SIMPLE INTEREST

| SECTION A | | CREDITOR CARVANA, LLC | |
|---|---|---|---|
| Buyer's Name(s)  Kathryn Nicole Ervin | | Address  6299 W 300 N | |
| Name | | City  GREENFIELD  County  N/A | |
| Address 2640 Rawhide St | | State IN  Zip 46140-9349  Phone  1-800-333-4554 | |
| City  Silver Springs  County  N/A | | Stock No. | |
| State  NV  Zip  89429 | | Salesman N/A  Date  07/23/19 | |
| Bus. Phone N/A  Res. Phone | | | |

| SECTION B | DISCLOSURE MADE IN COMPLIANCE WITH FEDERAL TRUTH IN LENDING ACT |
|---|---|

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate: | FINANCE CHARGE The dollar amount the credit will cost you: | AMOUNT FINANCED The amount of credit provided to you or on your behalf: | TOTAL OF PAYMENTS The amount you will have paid after you have made all payments as scheduled: | TOTAL SALES PRICE The total cost of your purchase on credit, including your down payment of $  800.00  : |
|---|---|---|---|---|
| 23.01  % | $  17,905.47 | $  21,024.80 | $  38,930.27 | $  39,730.27 |

| Your Payment Schedule will be: | Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|---|
| | 71 | $  541.00 | monthly beginning  08/22/19 |
| | 1 | $  519.27 | 07/22/25 |
| | N/A | $  N/A | N/A |

**Security:** You are giving a security interest in the goods or property being purchased.
☐ If checked, you are giving a security interest in  N/A .
**Late Charge:** If a payment is more than 10 days late, you will be charged $15.00 or 8% of the payment, whichever is less.
**Prepayment:** If you pay off early, you will not have to pay a penalty.
See your contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date, and penalties.                    (e) means estimate.

## INSURANCE AND DEBT CANCELLATION

Credit life insurance, credit disability insurance and debt cancellation coverage, which is known as GAP Coverage, are not required to obtain credit, and will not be provided unless you sign and agree to pay the additional cost.

| Type | Premium | Term |
|---|---|---|
| Credit Life | N/A | N/A |
| Joint Credit Life | N/A | N/A |
| Credit Disability | N/A | N/A |
| Credit Life and Disability | N/A | N/A |
| Joint Credit Life and Disability | N/A | N/A |
| Debt Cancellation Coverage (GAP Coverage) | N/A | N/A |

Signatures:
I want credit life insurance:  X _____ N/A _____
We want joint credit life insurance:  X _____ N/A _____
X _____ N/A _____
I want credit disability insurance:  X _____ N/A _____
I want credit life and disability insurance:
X _____ N/A _____
We want joint credit life and single disability insurance:
X _____ N/A _____
X _____ N/A _____
I want debt cancellation coverage (GAP Coverage):
X _____ N/A _____

You may obtain property insurance from anyone you want that is acceptable to the Creditor on page 1 of 7. If you get the insurance from the Creditor, you will pay $ _____ N/A _____ and the term of the insurance will be _____ N/A _____.

| SECTION C | ITEMIZATION OF AMOUNT FINANCED |
|---|---|

1. Vehicle Selling Price $ 17,800.00
   Plus: Documentary Fee $ N/A
   (This charge represents costs and profit to the dealer for items such as inspecting, cleaning, adjusting vehicles, and preparing documents related to the sale.)
   Plus: Emissions Inspection Fee $ N/A
   Plus Other ( N/A ) $ N/A
   Plus Other ( N/A ) $ N/A
   Plus Other ( N/A ) $ N/A
   Total Taxable Selling Price $ 17,800.00
2. Total Sales Tax $ 1,263.80
3. Amounts Paid to Public Officials
   a. Titling Fee $ 9.00
   b. Registration Fee $ 142.00
   c. Other N/A $ N/A
   Total Official Fees $ 467.00
   (Add 3a through 3c)
4. Optional, nontaxable, fees or charges
   a. Transit Charge $ 399.00
   b. N/A $ N/A
   c. N/A $ N/A
   d. N/A $ N/A
   e. N/A $ N/A
   f. N/A $ N/A
   Total Optional, nontaxable, fees or charges $ 0.00
   (Add 4a through 4f)
5. TOTAL CASH SALES PRICE $ 19,530.80
6. Gross Trade-In Allowance $ 0.00

| N/A | N/A | N/A | N/A |
|---|---|---|---|
| Year | Make | Model | VIN |

   Less Prior Credit or Lease Balance $ N/A
   Net Trade-In Allowance $ 0.00
   (If negative, enter 0 and see line 11a)

7. Down Payment (Other Than Net Trade-In Allowance):
   a. Trade-In Sales Tax Credit $ N/A
   b. Cash $ 800.00
   c. Manufacturer's Rebate $ N/A
   d. Deferred Down Payment $ N/A
   e. Other ( N/A ) $ N/A
   Down Payment (Add 7a through 7e) $ 800.00
8. TOTAL DOWN PAYMENT AND NET TRADE-IN ALLOWANCE
   (Add 6 and 7) $ 800.00
9. UNPAID BALANCE OF CASH SALES PRICE
   (Subtract 8 from 5) $ 18,730.80
10. Plus Optional Insurance and Debt Cancellation Charges*
    a. Credit Life Insurance Premium
       Paid to ( N/A )
       Term ( N/A ) $ N/A
    b. Credit Disability Insurance Premium
       Paid to ( N/A )
       Term ( N/A ) $ N/A
    c. Debt Cancellation Coverage (GAP Coverage)
       Paid to ( N/A )
       Term ( N/A ) $ N/A
    d. Other Insurance
       Paid to ( N/A )
       Term ( N/A ) $ N/A
    Total Optional Insurance and Debt Cancellation Charges
    (Add 10a through 10d) $ N/A
11. Other Amounts Financed*
    a. Prior Credit or Lease Balance $ 0.00
       Paid to ( N/A )
    b. ( Vehicle Protection ) $ 1,200.00
       Paid to ( Carvana )
    c. ( N/A ) $ N/A
       Paid to ( N/A )
    Total Other Amounts Financed $ 1,599.00
    (Add 11a through 11c)
12. TOTAL AMOUNT FINANCED $ 21,024.80
    (Add 9, 10 and 11)
    *Seller may retain or receive a portion of this amount.

| SECTION D | VEHICLE RETAIL INSTALLMENT CONTRACT AND SECURITY AGREEMENT |
|---|---|

This contract is made the 23 (day) of 07 (month) 19 (year), between you, the Buyer(s) shown on page 1 of 7, and us, the Seller shown as Creditor on page 1 of 7. Having been quoted a cash price and a credit price and having chosen to pay the credit price (shown as the Total Sales Price in Section B on page 1 of 7), you agree to buy and we agree to sell, subject to all the terms of this contract, the following described vehicle, accessories and equipment (all of which are referred to in this contract as "Collateral"):

New or Used: Used   Year and Make: 2016 Chevrolet   Series: Equinox   Body Style: SUV
No. of Cyl: 4   If truck, ton capacity: N/A   Manufacturer's Serial Number: 2GNALCEK6G6342990
Use for which purchased: ☒ Personal   ☐ Business   ☐ Agriculture
INCLUDING:
☐ Sun/Moon Roof        ☒ Air-Conditioning      ☒ Automatic Transmission
☒ Power Steering       ☒ Power Door Locks      ☒ Power Seats
☒ Power Windows        ☒ Tilt Wheel            ☐ Vinyl Top
☐ Cassette             ☒ Cruise Control        ☒ AM/FM Stereo
☒ Compact Disc Player
Dk. Gray Color   N/A   Tires   N/A   Lic. No.

You, severally and jointly, promise to pay to us the Total of Payments (shown in Section B) according to the Payment Schedule (also shown in Section B), until paid in full, together with interest after maturity at the Annual Percentage Rate disclosed on page 1 of 7.

KE

COPY VIEW

DocuSign Envelope ID: 033E7063-DD4B-4599-8DA6-B8C7B7BE213F

Case 20-50981-btb Doc 19 Entered 12/24/20 06:27:45 Page 14 of 23

This is a copy view of the Authoritative Copy held by the designated custodian.

To secure such payment, you grant to us a purchase money security interest under the Uniform Commercial Code in the Collateral and in all accessions to and proceeds of the Collateral. Insurance in which we or our assignee are named as beneficiary or loss payee, including any proceeds of such insurance or refunds of unearned premiums, or both, are assigned as additional security for this obligation and any other obligation created in connection with this sale. We, our successors and assigns, hereby waive any other security interest or mortgage which would otherwise secure your obligations under this contract except for the security interests and assignments granted by you in this contract.

| | | | | |
|---|---|---|---|---|
| Address where Collateral will be located: | 2640 Rawhide St | Silver Springs | N/A | NV |
| | Street | City | County | State |
| Your address after receipt of possession of Collateral: | 2640 Rawhide St | Silver Springs | N/A | NV |
| | Street | City | County | State |

Notice of Rescission Rights (Option to Cancel)
If the Buyer signs here, the notice of rescission rights on page 6 of 7 is applicable to this contract.

Buyer's signature     N/A

Co-Buyer's signature     N/A

STATE DISCLOSURE REQUIREMENTS: The provisions of Section B and Section C above are incorporated into this agreement for purposes of state disclosure requirements.

Additional Terms and Conditions: The additional terms and conditions set forth in this contract are a part of this contract and are incorporated herein by reference.

OPTION N/A   You pay no Finance Charge if the Total Amount Financed, Item No. 12, Section C, is paid in full on or before the N/A (day) of N/A (month) of N/A (year).

SELLER'S INITIALS: N/A

## SECTION E

X  If checked, you agree to use electronic records and electronic signatures to document this contract. Your electronic signatures on electronic records will have the same effect as signatures on paper documents. We may designate one authoritative copy of this contract. If we do, the authoritative copy will be the electronic copy in a document management system we designate for storing authoritative copies. We may convert the authoritative copy to a paper original. We will do so by printing one paper copy marked "Original." This paper original will have your electronic signature on it. It will have the same effect as if you had signed it originally on paper. If you agree to use electronic records and electronic signatures, we will comply with all applicable federal, state and local law and regulations.

UPON ENTERING INTO THIS CONTRACT, YOU WILL RECEIVE A PAPER COPY OF THE ORIGINAL CONTRACT ELECTRONICALLY SIGNED AND COMPLETE WITH ALL TERMS, CONDITIONS AND DISCLOSURES TO TAKE WITH YOU.

### NOTICE TO BUYER

**Do not sign this agreement before you read it or if it contains any blank spaces. You are entitled to a completed copy of this agreement. If you pay the amount due before the scheduled date of maturity of the indebtedness and you are not in default in the terms of the contract for more than 2 months, you are entitled to a refund of the unearned portion of the finance charge. If you fail to perform your obligations under this agreement, the vehicle may be repossessed and you may be liable for the unpaid indebtedness evidenced by this agreement.**

If you are buying a used vehicle with this contract, as indicated in the description of the vehicle on page 2 of 7, federal regulation may require a special buyer's guide to be displayed on the window.

THE INFORMATION YOU SEE ON THE WINDOW FORM FOR THIS VEHICLE IS PART OF THIS CONTRACT. INFORMATION ON THE WINDOW FORM OVERRIDES ANY CONTRARY PROVISIONS IN THE CONTRACT OF SALE.

*The text of the preceding two paragraphs is set forth below in Spanish:*
*Si usted está comprando un vehículo usado mediante este contrato según la descripción del vehículo en la página 2 de 7, la ley federal podrá exigir que la ventanilla demuestre una guía especial para el comprador.*
*LA INFORMACIÓN QUE USTED VE EN LA FORMA DE VENTANILLA PARA ESTE VEHÍCULO ES PARTE DE ESTE CONTRATO. LA INFORMACIÓN EN LA FORMA DE VENTANILLA DOMINA CUALESQUIER ESTIPULACIÓN CONTARIA EN EL CONTRATO DE VENTA.*

Retail Installment Contract-NV Not for use in transactions secured by a dwelling or a recreational vehicle
Bankers Systems™
Wolters Kluwer Financial Services

KE

RSSIMVLAZ-NV 10/1/2012

Page 3 of 7

DocuSign Envelope ID: 633E7063-DD4B-4599-80A0-B8C7B7BE219F

This is a copy view of the Authoritative Copy held
in the eDiscovery.com Vault

**BUYER AND CO-BUYER ACKNOWLEDGE RECEIPT OF A TRUE AND COMPLETELY FILLED-IN PAPER COPY OF THIS CONTRACT AND THE DISCLOSURE ON PAGES 1 AND 2 OF 7 AT THE TIME OF SIGNING.**

LIABILITY INSURANCE COVERAGE FOR BODILY INJURY AND PROPERTY DAMAGE CAUSED TO OTHERS IS NOT INCLUDED UNLESS OTHERWISE INDICATED IN SECTION C.

Buyer: _____ *Kathryn Ervin* _____          Date: _____ 07/23/19 _____

Co-Buyer: _____ N/A _____          Date: _____ N/A _____

Creditor: _____ Carvana, LLC _____          Date: _____ 07/23/19 _____

By: _____          Title: _____ General Counsel _____

[The rest of this page intentionally left blank.]

COPY VIEW

Retail Installment Contract-NV  Not for use in transactions secured by a dwelling or a recreational vehicle
Bankers Systems™
Wolters Kluwer Financial Services

KE  RSSIMVLAZ-NV 10/1/2012

Page 4 of 7

## ADDITIONAL TERMS AND CONDITIONS (Simple Interest)

**SIMPLE INTEREST CONTRACT** - This is a simple interest contract. The Finance Charge, Total of Payments and Payment Schedule set forth in the disclosures on page 1 of 7 may differ. The final payment may differ depending upon the dates payments are received and events which occur after this contract is made. For example, early payments will have the effect of reducing your final payment, while late payments will cause your final payment to be higher. Your promise requires you to pay the final payment on the date due, which payment will be equal to all unpaid sums due under this contract, even if the amount of the final payment differs from the amount of final payment disclosed on page 1 of 7 of this contract.

**DEFAULT** - If you default in the performance of this agreement, because (1) you fail to make a payment later than 30 days past the date required by the agreement, or (2) the prospect of payment, performance or realization of collateral is significantly impaired (the burden of establishing the prospect of significant impairment is on the Seller), we may at our option and without notice or demand (1) declare all unpaid sums immediately due and payable, (2) file suit against you for all unpaid sums, and (3) take immediate possession of the vehicle. Upon taking possession of the vehicle and giving notice as provided by law, if you do not redeem the vehicle, we will sell it at public or private sale. We may purchase the vehicle at any sale. The proceeds of the sale will be applied first to the expenses of retaking, reconditioning, storing and selling the property, and the remainder will be applied to the unpaid sums owing under this contract. Attorney's fees and court costs are allowed too. If there is any money left over (surplus), it will be paid to you. If a balance still remains owing, you promise to pay that balance upon demand. If you default or breach this agreement, you agree to pay finance charges at the Annual Percentage Rate shown on page 1 of 7 until all sums owing us are paid in full. Our remedies are cumulative and taking of any action is not a waiver and does not prohibit us from pursuing any other remedy. You promise to pay reasonable collection costs and expenses, including attorney's fees, if you default under this agreement. If suit is filed, you agree that attorney's fees and costs will be awarded to the prevailing party. If the vehicle is repossessed, we may store personal property found in the vehicle for your account and at your expense and, if you do not claim the property within 90 days after the repossession, we may dispose of the personal property in any manner we deem appropriate without liability to you.

**DELINQUENCY AND COLLECTION CHARGES** - You will pay a delinquency charge equal to the lesser of $15 or 8 percent of any installment in default for more than 10 days. If you default as described in the preceding paragraph and we refer this contract for collection to an attorney who is not our salaried employee or a salaried employee of the holder of this contract, you will pay reasonable attorney's fees plus court costs, and reasonable collection costs to the extent not prohibited by law.

**DEMAND FOR FULL PAYMENT AND ADDITIONAL REMEDIES ON DEFAULT** - If you default under this contract, at the time of the default or any time after default (if the default has not been cured previously) we may require immediate payment of the unpaid portion of the amount you owe us. If there is any money left over (surplus), it will be paid to you. On any default, we will have all the remedies of a secured party under the Uniform Commercial Code. If the cash price on page 2 of 7 is $1,000 or less, you will not be personally liable for any deficiency incurred in a sale after repossession.

**OWNERSHIP OF THE COLLATERAL** - You represent that there are no liens, claims or encumbrances on the Collateral except for the security interest you grant by this contract to us and you further represent that you have executed no financing statement covering the Collateral except for the one relating to this contract.

**LOCATION AND USE OF COLLATERAL** - You agree to notify us in writing of any change of your address or of any change in the location of the Collateral. Unless you first have received our written consent, you may not permanently take the Collateral out of the State shown in Section D in the section entitled "Address Where Collateral Will Be Located" and you may not sell, lease or otherwise dispose of the Collateral or any part of it by any means.

You will comply with all laws, ordinances, regulations and orders relating to the Collateral. You will keep the Collateral in good condition and will not alter or substantially modify it or conceal it. You will not allow any other security interest on the Collateral besides the security interest granted to us under this contract.

**INSPECTION OF THE COLLATERAL** - We may inspect the Collateral at any reasonable time.

**TAXES** - You are responsible for and will pay when due all taxes and assessments levied on the Collateral. If you fail to do so, we may pay any such tax or assessment on your behalf. An amount equal to that which we paid will be added to the Total of Payments then owing, and you will be charged a finance charge on the amount we paid at the highest lawful contract rate.

**PROPERTY INSURANCE** - You will keep the Collateral insured against such risks and in such amount as we may from time to time require with an insurer that you choose and we approve. As indicated in Section B, if you choose, we will obtain property insurance for you at the premium shown. Whether the insurance is provided by you or by us, you will pay all premiums for this insurance when the premiums are due and payable. If you provide property insurance, you will deliver the policies to us as additional security and will provide us with receipts showing payment of premiums. If you do not obtain the insurance or pay the premiums, we may do so for you. If we do this, an amount equal to that which we have paid for the premiums will be added to the Total of Payments then owing and a finance charge at the highest lawful rate will be charged on that amount. If we do not obtain the insurance, none of our other rights and remedies will be prejudiced. You agree that any proceeds from insurance are to be used to either repair or replace the vehicle. Whether or not the vehicle is insured, you must pay for it if it is lost, damaged or destroyed. If you default (as described on page 5 of 7), we may cancel the insurance and credit any insurance premium refunds to the unpaid balance of this contract.

**LIABILITY INSURANCE IS NOT REQUIRED BY THIS CONTRACT. YOU HAVE THE RIGHT TO CHOOSE THE PERSON THROUGH WHOM LIABILITY INSURANCE IS TO BE OBTAINED.**

**INFORMATION TO INSURANCE COMPANY OR AGENT** - You give your permission to furnish any information about the Collateral or any information about insurance policies on the Collateral to an insurance agent or company.

**CREDIT LIFE INSURANCE, CREDIT DISABILITY INSURANCE AND DEBT CANCELLATION COVERAGE (GAP COVERAGE)** - If you indicated in Section B that you want optional credit life insurance, credit disability insurance or debt cancellation coverage (GAP Coverage), or any combination thereof, you agree to pay for such insurance at the premium shown in Section B.

**NO WARRANTIES - THE SELLER MAKES NO REPRESENTATIONS, PROMISES OR WARRANTIES, EXPRESS OR IMPLIED, AS TO THE MERCHANTABILITY OF THE COLLATERAL OR WHETHER THE COLLATERAL IS SUITABLE OR FIT FOR THE PARTICULAR PURPOSE INTENDED UNLESS THE SELLER HAS DONE SO IN THIS CONTRACT OR IN A SEPARATE WRITTEN AGREEMENT SIGNED BY THE SELLER AS THE ORIGINAL SELLER OF THE COLLATERAL. HOWEVER, IF THE SELLER MAKES AN EXPRESS WARRANTY IN THIS CONTRACT OR IN A SEPARATE WRITTEN AGREEMENT SIGNED BY THE SELLER OR, WITHIN 90 DAYS AFTER THE DATE OF THIS CONTRACT, THE SELLER ENTERS INTO A SERVICE CONTRACT WITH THE BUYER THAT APPLIES TO THE COLLATERAL, THE EXCLUSION OF IMPLIED WARRANTIES SET FORTH IN THIS PARAGRAPH DOES NOT EXCLUDE ANY IMPLIED WARRANTIES THAT MAY EXIST WITH RESPECT TO THE COLLATERAL DURING THE TERM OF THE CONTRACT OR AGREEMENT IN WHICH THE EXPRESS WARRANTY IS MADE.**

Retail Installment Contract-NV  Not for use in transactions secured by a dwelling or a recreational vehicle
Bankers Systems™
Wolters Kluwer Financial Services

KE    RSSIMVLAZ-NV 10/1/2012

Page 5 of 7

DocuSign Envelope ID: 033ED863-DD4B-4599-80A9-B8C7B1BE319F

This is a copy view of the Authoritative Copy held by the designated custodian

**NOTICES -** Any notice we have to give you pursuant to the Uniform Commercial Code will be reasonable if we send it to your address shown in Section D in the section entitled "Your Address After Receipt of Possession of Collateral" at least 5 days before the event with respect to which notice is required unless we have actual knowledge of a change in your address and, in that event, the notice will be reasonable if we send it to the changed address.

**TIME IS OF THE ESSENCE -** You understand that all payments that are required must be made on the day due.

**EXERCISING OUR RIGHTS -** We can, without notice, delay enforcing our rights or exercise only part of them, without losing them, or waive a right we have to one Buyer without waiving it as to the other(s).

**MEANING OF WORDS -** In this contract the words "you" and "your" means each and all those who sign this contract as Buyers or Co-Buyers, and their heirs, executors, administrators, successors and assigns. The words "we," "us" and "ours" means the Creditor shown on page 1 of 7 in Section A, and if this contract is assigned, its successors and assigns and any other holder of this contract.

**GOVERNING LAW -** This contract has been delivered in the State of Creditor's place of business and will be governed by the laws of that State and applicable federal law.

**INVALIDITY -** Wherever possible each provision of this contract shall be interpreted so that it is valid under applicable law, but if any provision is prohibited or invalid, the remaining provisions of this contract will continue to be valid.

**NOTICE OF RESCISSION RIGHTS (Option to Cancel) -** The provisions of this paragraph only apply if you have signed the Notice of Rescission Rights on page 3 of 7 of this contract. (1) You agree to furnish the Seller any documentation necessary to verify information contained in your credit application. (2) You acknowledge that it may take a few days for the Seller to verify your credit and assign the contract. In consideration of the Seller agreeing to deliver the vehicle, you agree that if the Seller is unable to assign the contract to a Financial Institution with whom the Seller regularly does business pursuant to terms of assignment acceptable to the Seller, the Seller may elect to rescind the contract. (3) If the Seller elects to rescind the contract, the Seller shall, within 20 days after the date of the contract, give you notice of the rescission. Such notice shall be deemed given upon deposit of a written notice in the United States mail directed to you at the address you stated in the contract or upon any other manner in which actual notice is given to you. Upon receipt of such notice, you shall immediately return the vehicle to the Seller in the same condition as when sold, reasonable wear and tear excepted, and the contract shall be deemed rescinded. The Seller agrees, upon rescission of the contract, to restore to you all consideration received in connection with the contract, including any trade-in vehicle. (4) If the vehicle is not immediately returned to the Seller after giving notice of the Seller's election to rescind the contract, you are liable to the Seller for all expenses incurred by the Seller in obtaining possession of the vehicle, including attorney's fees, and the Seller has the right to repossess the vehicle as permitted by law. (5) While the vehicle is in your possession, all terms of the contract, including those related to the use of the vehicle and insurance for the vehicle, are in force and all risk of loss or damage to the vehicle must be assumed by you. You shall immediately pay all reasonable repair costs related to any damage to the vehicle while it is in your possession or under your control and until the vehicle is returned to the Seller.

**NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

If you are buying a used vehicle with this contract, as indicated in the description of the vehicle on page 2 of 7, federal regulation may require a special buyer's guide to be displayed on the window.

**THE INFORMATION YOU SEE ON THE WINDOW FORM FOR THIS VEHICLE IS PART OF THIS CONTRACT. INFORMATION ON THE WINDOW FORM OVERRIDES ANY CONTRARY PROVISIONS IN THE CONTRACT OF SALE.**

## ASSIGNMENT

Seller may transfer this contract to another person ("Assignee"). That person will have all Seller's rights, privileges and remedies. The Seller may assign this contract electronically. Contact Assignee about this contract at ___N/A___

_____

_____ .

Seller signs: ___N/A___

By: _____

Title _____

To induce Assignee to purchase the contract, Seller represents and warrants to Assignee as follows: (a) the contract is genuine and the statements and amounts stated herein are correct; (b) the contract and security interest arose entirely from the sale of the Collateral or services described in the contract, or both; (c) the down payment, if any shown on page 2 of 7 of this contract, has been received and no part thereof was advanced directly or indirectly by Seller to Buyer; (d) the goods and services have been furnished to the satisfaction of Buyer and all obligations of warranty to Buyer, either express or implied, have been and will continue to be fulfilled by Seller; (e) the Collateral or services, or both, have been sold, provided and delivered to and accepted by Buyer; (f) the security interest granted to Seller in the contract constitutes a valid first lien on the Collateral and has been filed or recorded according to law to preserve the priority of each lien; (g) the Collateral is free and clear of all liens and encumbrances, except the security interest granted by this contract; (h) the full amount of the stated Total of Payments remains unpaid; (i) Seller is the holder of the contract and the security interest in the Collateral free and clear of all liens and encumbrances and Seller has full power and authority to assign the same; (j) the transaction was consummated on the above date set forth in the contract and Buyer did not receive possession of the Collateral prior to the date of consummation; (k) Buyer was furnished a completed copy of the contract prior to consummation; (l) the Collateral is insured with a company acceptable to Assignee against physical damage in addition to such other risks as Assignee requires under an insurance policy acceptable to Assignee; (m) Seller has not knowingly communicated to Assignee incorrect information relating to the Buyer's application or credit statement or knowingly failed to communicate information relating to such application or credit statement; (n) the facts set forth in the contract are true; (o) Buyer has no defense or counterclaim to payment of the obligation evidenced by the contract; (p) Buyer is or, if more than one, each is not a minor and has legal capacity to execute this contract and is liable thereon; and (q) Seller has no reason to believe the Buyer has ever violated any laws concerning liquor or narcotics.

In the event any warranty shall be breached or any representation shall be false, Seller shall, upon demand and irrespective of whether the contract is then in default, repurchase the contract from Assignee at a price equal to the unpaid balance of the contract plus accrued interest, or such other amount agreed to by Seller and Assignee in a separate agreement as in effect on the date of such demand by Assignee, plus any costs or expenses of collection, including attorney's fees, whether incurred by Assignee by suit or on appeal or otherwise. Seller waives all defenses that otherwise might have been available but nothing herein contained shall preclude Assignee from enforcing against Seller any other remedies provided by law for misrepresentation or breach of warranty. In the event of any proceedings commenced by Assignee against Buyer with respect to the contract, services or the Collateral, if Buyer asserts as a defense, set off or counterclaim any act, omission or default by Seller, Seller shall forthwith on demand repurchase the contract for the amount set forth above. The provisions of this assignment shall be binding on

Retail Installment Contract-NV   Not for use in transactions secured by a dwelling or a recreational vehicle
Bankers Systems™
Wolters Kluwer Financial Services                                                   RSSIMVLAZ-NV 10/1/2012

KE

Page 6 of 7

DocuSign Envelope ID: 033E7069-DD4B-4599-8DA6-B8C7B7BE2F9F

This is a copy view of the Authoritative Copy held by the designated custodian

the heirs, representatives, successors and assigns of Seller and shall inure to the benefit of the successors and assigns of Assignee. The above assignment provisions apply and are in addition to any obligations of Seller as provided in the paragraph below endorsed by Seller.

1. RECOURSE: Seller absolutely and unconditionally guarantees the prompt payment of either the total unpaid amount of the contract and any accrued interest or such other amount agreed to by Seller and Assignee in a separate agreement, together with all costs, expenses and reasonable attorney's fees incurred in the collection of said amount. Seller waives all defenses arising by reason of any failure to give notice of acceptance of this guaranty or default of Buyer, or arising by reason of any extension of time given to Buyer, or by reason of any failure by Assignee to pursue Buyer or the Collateral or other property of Buyer or to resort to other security or remedies which may be available, and waives any and all defenses arising out of the guarantor relationship.

Seller: _____

By: _____

Title: _____ Date: _____

2. REPURCHASE: In the event of default by the Buyer under any of the terms or conditions of the contract, Seller will repossess and repurchase the Collateral, or if the Collateral has already been repossessed, Seller will repurchase the Collateral at the place of repossession or recovery. The Collateral will be repurchased in any event AS IS, at a price equal to the then unpaid balance of the contract and any accrued interest, or such other amount agreed to by Seller and Assignee in a separate agreement as in effect as of the default, together with all costs, expenses and reasonable attorney's fees incurred by Assignee in the collection of said amount. Seller waives all defenses arising by reason of any failure to give notice of acceptance of this agreement or default of Buyer, or arising by reason of extension of time given to Buyer, or by reason of any failure by Assignee to pursue Buyer or the Collateral or other property of Buyer or to resort to other security or remedies which may be available, and waives all other defenses that might otherwise have been available. At the time of repurchase, Seller shall pay to Assignee the purchase price in cash and Assignee may reassign to Seller without recourse and without warranties, express or implied, all title retention or lien instruments and all contracts or promissory notes which Assignee then holds upon such Collateral.

Seller: _____

By: _____

Title: _____ Date: _____

3. LIMITED ENDORSEMENT: In the event of default of Buyer before Buyer shall have paid the first _____ installments under the foregoing contract, Assignee may reassign the contract to Seller and Seller agrees, upon tender of such reassignment and in consideration thereof to pay to Assignee either the then unpaid balance of the contract and any accrued interest, or such other amount agreed to by Seller and Assignee in a separate agreement as in effect as of the reassignment, together with all costs, expenses and reasonable attorney's fees incurred in the collection of said amount. Seller waives all defenses arising by reason of any failure to give notice of acceptance of this agreement or default of Buyer, or arising by reason of any extension of time given to Buyer, or by reason of any failure by Assignee to pursue Buyer or the Collateral or other property of Buyer or to resort to other security or remedies which may be available, and Seller waives any other defenses that might otherwise have been available.

Seller: _____

By: _____

Title: _____ Date: _____

4. WITHOUT RECOURSE: This assignment shall be without recourse against Seller except for such obligations as are set forth in the assignment above.

Seller: _____

By: _____

Title: _____ Date: _____

Retail Installment Contract-NV Not for use in transactions secured by a dwelling or a recreational vehicle
Bankers Systems™
Wolters Kluwer Financial Services

KE  RSSIMVLAZ-NV 10/1/2012

_____ Page 7 of 7

# EXHIBIT "2"

| Transaction Date | Transaction Amount | Transaction Event | Reversal Reason | NSFDate | Current Due Date | Amount Due | Partial Pay | Remaining Due | Principal | Interest | Late Fee | Other Fee | Per Diem | Days Between Payments | Next Due Date | Principal Outstanding | Receipt Number | Lot Number | Check Number | Posted Date |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 3/11/2020 | 863.97 | Principal Only Payment--CARVANA VSC REFUND | | | 10/22/2019 | 541.00 | 0.00 | 541.00 | 863.97 | 0.00 | 0.00 | 0.00 | 12.67 | | 10/22/2019 | 20,160.83 | 28697421 | 10591 | 549292 | 3/11/2020 |
| 1/30/2020 | 285.00 | Normal Payment--MOBILE DEBIT CARD | | | 9/22/2019 | 541.00 | 0.00 | 541.00 | 0.00 | 285.00 | 0.00 | 0.00 | 13.22 | 126 | 10/22/2019 | 21,024.80 | 28373960 | 10591 | 536878 | 1/30/2020 |
| 1/28/2020 | (15.00) | NSF Fee Assessment | | | 9/22/2019 | 541.00 | 256.00 | 285.00 | 0.00 | 0.00 | 0.00 | (15.00) | 12.72 | | 9/22/2019 | 20,229.68 | | 0 | 0 | 1/28/2020 |
| 1/24/2020 | (2,469.00) | Payment Reversal--ONE TIME ACH PAYMENT | NSF - Insufficient Funds | 1/28/2020 | 9/22/2019 | 541.00 | 256.00 | 285.00 | (795.12) | (1,653.88) | (20.00) | 0.00 | 13.22 | | 9/22/2019 | 21,024.80 | 19890786 | 10592 | | 1/28/2020 |
| 1/24/2020 | (30.00) | NSF Fee Reversal--ONE TIME ACH PAYMENT | NSF - Insufficient Funds | | 9/22/2019 | 541.00 | 0.00 | 541.00 | 0.00 | 0.00 | 0.00 | (30.00) | 12.72 | | 2/22/2020 | 20,229.68 | 19890786 | 10592 | | 1/28/2020 |
| 1/24/2020 | 2,469.00 | Normal Payment--ONE TIME ACH PAYMENT | | | 9/22/2019 | 541.00 | 0.00 | 541.00 | 795.12 | 1,653.88 | 20.00 | 0.00 | 12.72 | 120 | 2/22/2020 | 20,229.68 | 19890786 | 10592 | | 1/24/2020 |
| 1/24/2020 | 30.00 | NSF Fee Paid--ONE TIME ACH PAYMENT | | | 9/22/2019 | 541.00 | 256.00 | 285.00 | 0.00 | 0.00 | 0.00 | 30.00 | 13.22 | | 9/22/2019 | 21,024.80 | 19890786 | 10592 | | 1/24/2020 |
| 1/22/2020 | (15.00) | NSF Fee Assessment | | | 9/22/2019 | 541.00 | 256.00 | 285.00 | 0.00 | 0.00 | 0.00 | (15.00) | 13.22 | | 9/22/2019 | 21,024.80 | | 0 | 0 | 1/22/2020 |
| 1/18/2020 | (200.00) | Payment Reversal--ONE TIME ACH PAYMENT | NSF - Insufficient Funds | 1/22/2020 | 9/22/2019 | 541.00 | 256.00 | 285.00 | 0.00 | (200.00) | 0.00 | 0.00 | 13.22 | | 9/22/2019 | 21,024.80 | 19797161 | 10592 | | 1/22/2020 |
| 1/18/2020 | 200.00 | Normal Payment--ONE TIME ACH PAYMENT | | | 9/22/2019 | 541.00 | 456.00 | 85.00 | 0.00 | 200.00 | 0.00 | 0.00 | 13.22 | 114 | 9/22/2019 | 21,024.80 | 19797161 | 10592 | | 1/18/2020 |
| 1/6/2020 | (5.00) | Late Fee Assessment | | | 9/22/2019 | 541.00 | 256.00 | 285.00 | 0.00 | 0.00 | (5.00) | 0.00 | 13.22 | | 9/22/2019 | 21,024.80 | | 0 | | 1/6/2020 |
| 12/7/2019 | (5.00) | Late Fee Assessment | | | 9/22/2019 | 541.00 | 256.00 | 285.00 | 0.00 | 0.00 | (5.00) | 0.00 | 13.25 | | 9/22/2019 | 21,024.80 | | 0 | | 12/7/2019 |
| 11/6/2019 | (5.00) | Late Fee Assessment | | | 9/22/2019 | 541.00 | 256.00 | 285.00 | 0.00 | 0.00 | (5.00) | 0.00 | 13.25 | | 9/22/2019 | 21,024.80 | | 0 | | 11/6/2019 |
| 9/26/2019 | 541.00 | Normal Payment--ONE TIME ACH PAYMENT | | | 8/22/2019 | 541.00 | 256.00 | 285.00 | 0.00 | 541.00 | 0.00 | 0.00 | 13.25 | 28 | 9/22/2019 | 21,024.80 | 17656912 | 10592 | | 9/26/2019 |
| 9/6/2019 | (5.00) | Late Fee Assessment | | | 8/22/2019 | 541.00 | 256.00 | 285.00 | 0.00 | 0.00 | (5.00) | 0.00 | 13.25 | | 8/22/2019 | 21,024.80 | | 0 | | 9/6/2019 |
| 8/29/2019 | 256.00 | Normal Payment--ONE TIME ACH PAYMENT | | | 8/22/2019 | 541.00 | 256.00 | 285.00 | 0.00 | 256.00 | 0.00 | 0.00 | 13.25 | 7 | 8/22/2019 | 21,024.80 | 17167225 | 10592 | | 8/29/2019 |
| 8/23/2019 | (15.00) | NSF Fee Assessment | | | 8/22/2019 | 541.00 | 0.00 | 541.00 | 0.00 | 0.00 | 0.00 | (15.00) | 13.16 | | 8/22/2019 | 20,881.37 | | 0 | 0 | 8/23/2019 |
| 8/22/2019 | (541.00) | Payment Reversal--DT Auto Pay | NSF - Insufficient Funds | 8/23/2019 | 8/22/2019 | 541.00 | 0.00 | 541.00 | (143.43) | (397.57) | 0.00 | 0.00 | 13.25 | | 8/22/2019 | 21,024.80 | 17039510 | 10592 | | 8/23/2019 |
| 8/22/2019 | 541.00 | Normal Payment--DT Auto Pay | | | 9/22/2019 | 541.00 | 0.00 | 541.00 | 143.43 | 397.57 | 0.00 | 0.00 | 13.16 | 0 | 9/22/2019 | 20,881.37 | 17039510 | 10592 | | 8/22/2019 |

# EXHIBIT "3"



 NADAguides Value Report 12/2/2020

# 2016 Chevrolet Equinox
## Utility 4D LT 2WD

⇄ CHANGE CAR     ⊕ COMPARE

## Values

|  | Rough Trade-In | Average Trade-In | Clean Trade-In | Clean Retail |
|---|---|---|---|---|
| Base Price | $10,275 | $11,475 | $12,450 | $14,925 |
| Mileage (29,432) | $2,625 | $2,625 | $2,625 | $2,625 |
| Total Base Price | $12,900 | $14,100 | $15,075 | $17,550 |
| **Options** |  |  |  |  |
| **Price + Options** | **$12,900** | **$14,100** | **$15,075** | **$17,550** |

Selling Your Car? **Get an Online Offer** in 2 Minutes.

| Certified Pre-Owned (CPO) ⓘ |  |  |  | +$950 |
|---|---|---|---|---|
| **Certified Price with Options** |  |  |  | **$18,500** |

## <u>CERTIFICATE OF SERVICE</u>

I am employed in the County of Orange, State of California.  I am over the age of eighteen and not a party to the within action.  My business address is 1920 Old Tustin Ave., Santa Ana, CA 92705.

I am readily familiar with the business's practice for collection and processing of correspondence for mailing with the United States Postal Service; such correspondence would be deposited with the United States Postal Service the same day of deposit in the ordinary course of business.

1.  On December 24, 2020, I served the following document(s):

- **MOTION FOR RELIEF FROM STAY**

2.  I served the above-named document(s) by the following means to the persons as listed below:

a.  **ECF System**

COUNSEL FOR DEBTOR:
   Not Applicable

TRUSTEE:
   WILLIAM A. VAN METER        ECF@reno13.com

b.  **United States mail, postage fully prepaid**

DEBTOR(s):
KATHRYN NICOLE ERVIN
2540 RAWHIDE STREET
SILVER SPRINGS, NV  89429

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

DATED:  December 24, 2020        By:  */s/ Brandy Carroll*
                                      Brandy Carroll